**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

E.C., a minor, individually and by and
through his parents and next friends, W.C.
and K.C.,

       *Plaintiff,*

 vs.

U.S.D. 385 ANDOVER, *et al*,

       *Defendants.*

Case No. 18-1106-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendant U.S.D. 385 Andover's ("USD 385") motion to dismiss Counts I, IV, V, VI, VII, and VIII of Plaintiff's First Amended Complaint (Doc. 44).[1] Plaintiff E.C., by and through his parents W.C. and K.C., brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. For the reasons stated below, the Court grants USD 385's motion to dismiss Counts I, IV, V, VI, VII, and VIII.

---

[1] In its motion, USD 385 does not seek to dismiss Counts II or III.

# I.     Factual and Procedural Background[2]

E.C. is an 11-year-old boy with a disability who has attended many local schools, oftentimes transferring in the middle of the year.  At one time or another, E.C. has attended New Song Academy, Princeton Children's Center, Holy Cross Lutheran School, Sunflower Elementary School, Meadowlark Elementary School, Prospect Special Day School, Haverhill Special Day School ("Haverhill"), Heartspring Day School ("Heartspring"), Lincoln Elementary School, Andover eAcademy, and Prairie Creek Elementary School ("Prairie Creek").[3]  Particularly relevant to this case is the fact that E.C. attended Fifth Grade at Prairie Creek in Andover and Haverhill in Augusta, both of which are within USD 385's district.  To accommodate disabled students and provide them with Free, Appropriate Public Education ("FAPE"), USD 385 and other Butler County school districts have formed the Butler County Special Education Interlocal #638 ("Interlocal").[4]  Throughout E.C.'s schooling, the Interlocal has developed several Individualized Educational Programs ("IEP") and Behavioral Intervention Plans ("BIP") to attempt to meet E.C.'s special educational needs.

E.C.'s disability[5] manifests itself in aggressive, disruptive, disobedient, offensive, and sometimes violent, behavior.  The Interlocal first formed an IEP and BIP for E.C. on November 19, 2011.  Over time, E.C.'s behavior and school performance failed to improve.  Beginning in

---

[2] The facts are taken from E.C.'s First Amended Complaint and are accepted as true for the purposes of this ruling.

[3] Although it is unclear from E.C.'s Amended Complaint, not all of these schools are under USD 385's administration.

[4] The Interlocal is comprised of nine school districts in Butler County, one of which is USD 385.

[5] E.C.'s doctor has evaluated him as falling within the "autism spectrum disorder." However, USD 385 and the Interlocal contested this diagnosis, relying on independent evaluations that placed E.C. more in the attention deficit hyperactive disorder, and/or other behavioral disorders.  That dispute is not relevant to the current motion.

2015, E.C. received educational services from Heartspring. Unlike prior interventions, these services consistently improved E.C.'s performance in school, reducing the negative manifestations of his disability. However, beginning in the summer of 2016, Heartspring was no longer able to provide E.C. with full-time educational services pursuant to his IEP. Instead, E.C.'s primary school at the time, Prairie Creek, undertook to carry out the IEP largely by itself, with some weekly assistance from Heartspring staff. After four emergency safety interventions ("ESI") in Fall 2016, Prairie Creek's principal indicated that E.C.'s IEP should be modified and that he should be transferred to Haverhill. In October 2016, E.C.'s parents consented to the new IEP and transferred E.C. to Haverhill. Neither Prairie Creek nor Haverhill's environments improved E.C.'s educational or behavioral outcomes as Heartspring had.

Two events in E.C.'s educational history are particularly relevant to this motion. First, throughout E.C.'s schooling, his parents have been involved with the Interlocal's development and modification of his IEP. However, in May 2016 the Interlocal made changes to E.C.'s IEP without consulting his parents. In response, E.C. filed a complaint with the Kansas State Department of Education ("KSDE"), which ruled in his favor. Later that year, in October 2016, Prairie Creek called local police after a particularly aggressive instance of E.C.'s misbehavior. The police arrested E.C. and took him to juvenile detention. It was after this arrest that Prairie Creek initiated another IEP modification, transferring E.C. to Haverhill.

The second event relevant to this motion occurred in Spring 2017. In response to a perceived lack of clarity in Haverhill's communications with E.C.'s parents, E.C. filed for an IDEA due process hearing on March 31, 2017. Beginning on April 10, E.C.'s parents stopped sending E.C. to Haverhill and instead utilized the Interlocal's A+ online learning system. Noticing E.C.'s absence from school, Haverhill sent a letter of inquiry to E.C.'s parents on April 14, 2017. E.C.'s

parents failed to respond to that letter, incorrectly assuming that E.C.'s use of the online learning system constituted school attendance. Haverhill filed a truancy charge with the KSDE, and on June 23, 2017, an agent of the Kansas Department for Children and Families ("KDCF") went to E.C.'s home to speak with his parents. E.C.'s parents were not home at the time but later communicated with the KDCF agent, informing her about the ongoing IDEA due process hearing. In response, the KDCF agent closed the truancy investigation, indicating that she was formerly unaware of the IDEA proceedings.

Pursuant to E.C.'s March 31, 2017 IDEA complaint, a hearing was held by independent hearing officer James Beasley (the "Hearing Officer") over a period of nine days (June 26–28, July 12–13, August 23–24, and September 19–20, 2017). The Hearing Officer considered the following questions: did USD 385 and the Interlocal (collectively the "Districts") deny autism as the primary exceptionality for E.C., resulting in a denial of FAPE?; did the Districts fail to provide appropriate services for E.C.'s autism diagnosis, resulting in a denial of FAPE?; did the Districts fail to implement the behavior intervention plan, resulting in a denial of FAPE?; did the Districts fail to ensure that the IEP provided FAPE?; did the Districts refuse to provide a required IEP amendment?; and lastly, if the Districts failed to provide FAPE, does that entitle E.C. to a residential placement at an undetermined location? The Hearing Officer issued his decision on December 18, 2017, ruling in favor of USD 385 and the Interlocal on all issues.

E.C. timely filed an appeal with the KSDE on January 17, 2018. Administrative Law Judge Bob L. Corkins (the "Review Officer") reviewed the Hearing Officer's decision and affirmed it on March 2, 2018. After properly exhausting all administrative remedies under the IDEA, E.C. filed this Case on April 2, 2018, seeking review and reversal of the IDEA administrative decisions.

Multiple Defendants moved to dismiss the complaint. In response, E.C. filed his First Amended Complaint, further supplementing his factual allegations.

In addition to his IDEA claims, E.C. asserts Section 504 and ADA claims, alleging that USD 385 failed to provide public education free from discrimination based on his disability. Furthermore, E.C. asserts a § 1983 claim, alleging USD 385 violated his rights under the Fourth and Fourteenth Amendments through its disciplinary measures. USD 385 now moves to dismiss Counts I, IV, V, VI, VII, and VIII for failure to state claims.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[7] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[8] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[9] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10] Viewing the complaint in this manner, the court must decide whether the

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[10] *Iqbal*, 556 U.S. at 678–79.

plaintiff's allegations give rise to more than speculative possibilities.[11]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[12]

### III.    Analysis

### A.    Counts I & IV – "Denial of Due Process" and "Deference/Due Weight" (IDEA)

In Counts I and IV, E.C. asserts two claims arising under the IDEA.  However, the Court concludes that these Counts do not independently assert IDEA claims different from the claims in Count II or III, respectively.  In his Response, E.C. appears to concede that Counts I and IV are based on the same legal theories—but supported by slightly different facts—as Counts II and III.  E.C. seems to accept the proposed collapsing of Counts I and IV into Counts II and III, so long as his separate factual allegations are not dismissed.  The Court does not dismiss specific factual allegations that may support Counts I or IV but rather agrees with USD 385 that, for the sake of judicial efficiency, those Counts be dismissed as superfluous to Counts II and III.  As a result, the Court grants USD 385's motion to dismiss Counts I and IV.

The IDEA provides federal funds to help state and local education agencies meet their obligation to educate students with disabilities.[13]  A state receiving federal funds under the IDEA must implement policies to ensure that disabled students have access to a "free, appropriate public education," commonly known as FAPE.[14]  Under the IDEA, state educational agencies must

---

[11] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[13] 20 U.S.C. § 1400, *et seq.*

[14] 20 U.S.C. § 1412(a)(1)(A).

adhere to substantive and procedural requirements.[15]  In Kansas, if a disabled student believes that he is not receiving FAPE, or that the state has violated IDEA procedures, he can file a complaint with the Kansas State Department of Education ("KSDE").[16]  The aggrieved student is entitled to a due process hearing from an administrative law judge (the "Hearing Officer").[17]  During that hearing, parties can present evidence, cross-examine witnesses, and allege violations of the IDEA.[18]  The Hearing Officer creates a record of the administrative hearing and issues its decision.[19]

The student can appeal the Hearing Officer's decision to the Kansas Office of Administrative Hearings.[20]  There, another administrative law judge (the "Review Officer") will review the Hearing Officer's decision in its entirety and issue its decision.[21]  After exhausting these two administrative remedies at the state level, a student may file a civil action in federal district court, seeking review of the administrative hearings.[22]  Plaintiffs may state a cause of action under the IDEA in two different ways: by asserting a violation of the Act's substantive provisions, or by asserting a violation of the Act's procedural requirements.[23]

To establish a prima facie case for violation of the IDEA's substantive FAPE requirement, a plaintiff must prove that the public agency responsible for providing education services to a

---

[15] *T.S. v. Indep. Sch. Dist. No. 54*, 265 F.2d 1090, 1091 (10th Cir. 2001).

[16] 34 C.F.R. § 300.507, *et seq.*

[17] 34 C.F.R. § 300.511; K.A.R. 91-40-29(b).

[18] 34 C.F.R. § 300.512.

[19] 34 C.F.R. § 300.513.

[20] K.S.A. 72-3418; K.S.A. 75-37,12 l(d).

[21] 34 C.F.R. § 300.514; K.A.R. 91-40-51(f).

[22] K.S.A. 72-3418.

[23] 20 U.S.C. § 1415(i).

disabled student failed to develop an IEP that was reasonably calculated to provide educational benefit to the student.[24] To establish a prima facie case of liability for violation of the IDEA's procedural requirements, a plaintiff must prove that the agency responsible for providing educational services to the disabled student failed to comply with either (1) the IDEA's identification, evaluation, or placement procedures, or (2) the IDEA's procedural safeguards, including the opportunity to make a complaint, to receive notice of a proposal or refusal to change a student's placement, and to have an impartial due process hearing.[25]

In Count I, E.C. essentially asserts a procedural violation of the IDEA. Since E.C. more clearly states this procedural violation in Count II, the Court concludes that Count II adequately covers the claims E.C. attempts to make in Count I. In Count II, E.C. alleges that "the [Hearing Officer] here ignored and failed to analyze the procedural violations alleged by Parents in the due process proceeding and failed to find that such procedural violations impacted E.C.'s access to educational opportunity and benefit." Similarly, E.C. alleges in Count I that the Hearing Officer violated his IDEA procedural rights by refusing to fully admit certain evidence. Count II substantially fleshes out the applicable law as well as alleging more specific facts relating to E.C.'s procedural claim. The Court, therefore, dismisses Count I for failure to state a claim independent from Count II.

Likewise, in Count III E.C. challenges the Review Officer's affirmation of the Hearing Officer's decision. Count III alleges substantive violations of IDEA, arguing that E.C. was denied FAPE when USD 385 "predetermined" that an autism exceptionality should be excluded from the

---

[24] *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 187–191 (1982).

[25] 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2).

IEP. Count III further alleges that the Districts failed to provide E.C. with "appropriate nonacademic services" and denied him extended school year services. These substantive allegations were considered in the Hearing and Review Officers' determination of the denial of FAPE to E.C. Count IV alleges that the Review Officer used faulty reasoning based on inappropriate evidence when independently considering the FAPE determination. Since Count III adequately alleges those violations, the Court also dismisses Count IV for failure to state a claim independent from Count III.

**B.      Counts V & VI – Section 504 and the ADA**

E.C. has labeled both Counts V and VI as "Section 504 and the ADA." In Count V, E.C. alleges that USD 385, through the Interlocal and its employees, discriminated against E.C. by reason of his disability and therefore violated both Section 504 of the Rehabilitation Act and Title II of the ADA. In Count VI, E.C. similarly alleges that USD 385 violated Section 504 and the ADA because it had "practices and policies" that discriminated against disabled students like himself. For the following reasons, the Court concludes that E.C. has failed to state claims in Counts V and VI, and the Court dismisses both claims.

Claims under § 504 of the Rehabilitation Act and Title II of the ADA, "involve the same substantive standards, [so courts] analyze them together."[26] Both § 504 and Title II of the ADA state that no individual with a disability shall, "by reason of" such disability, be subjected to discrimination.[27] To state a prima facie claim under Section 504 or the ADA, a plaintiff must allege that: (1) he is disabled under the Act; (2) he is "otherwise qualified" to participate in the

---

[26] *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (internal citations omitted).

[27] 29 U.S.C. § 794; 42 U.S.C. § 12132 (emphasis added).

program; (3) the program receives federal financial assistance; and (4) the program discriminates against the plaintiff.[28]  Furthermore, a plaintiff must allege intentional discrimination.[29]  However, intentional discrimination does not require proof of "personal animosity or ill will."[30]  Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."[31]  Put another way, "[t]he test for deliberate indifference in the context of intentional discrimination comprises two prongs: (1) knowledge that a harm to a federally protected right is substantially likely . . . and (2) a failure to act upon that . . . likelihood."[32]  "[F]ailure to act is a result of conduct that is more than negligent, and involves an element of deliberateness."[33]  Finally, "[u]nder either the ADA or the Rehabilitation Act, [a plaintiff] is obligated to show that he was otherwise qualified for the benefits he sought and that he was denied those *solely by reason of* [his] disability."[34]

Two Tenth Circuit decisions apply to the present case.  In *J.H. ex rel. J.P. v. Bernalillo County*,[35] an officer arrested a disabled student for kicking a teacher.  The student alleged that the arrest was "by reason of his disability" and therefore violated his ADA rights.[36]  The court held

---

[28] *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

[29] *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153–54 (10th Cir. 1999).

[30] *Id.* at 1153.

[31] *Id.*

[32] *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (internal citations omitted).

[33] *Id.*

[34] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (internal citations omitted) (emphasis added).

[35] 806 F.3d 1255 (10th Cir. 2015).

[36] *Id.* at 1257.

that the officer acted by reason of the student's *conduct,* not his disability.[37]  Likewise, in *J.V. v. Albuquerque Public Schools*,[38] an officer handcuffed a disabled student after the student displayed physical aggression toward teachers.  The Tenth Circuit permitted the physical restraint of the disabled student based on his conduct.  Ruling in favor of the school district on summary judgment, the court concluded that "a student's conduct may be regulated, so long as the action is not taken by reason of the student's disability," even if that conduct is a "manifestation of his disability."[39]

The Court concludes that E.C. has not stated a facially plausible claim for discrimination under Section 504 or the ADA.  While E.C. states sufficient facts to satisfy the first three elements of a discrimination claim—that he is disabled and qualified to participate in the IDEA, and that USD 385 receives federal funds—he fails to plausibly allege facts to satisfy the final element, discrimination.  E.C. alleges that USD 385 discriminated against him when the Interlocal repeatedly restrained and secluded him in response to his disruptive—and oftentimes violent— conduct.  He argues that since he was removed from the classroom, he was denied his right to public education.  Importantly, however, E.C. fails to allege any facts that give rise to an inference that USD 385's actions were solely—or even partly— "by reason of" E.C.'s disability. Even though E.C. alleges that all of his actions were "manifestations of [his] disability," the 10th Circuit has specifically held that "a student's conduct may be regulated," even if it is a "manifestation of his disability."[40]  E.C. has failed to plausibly allege that USD 385 discriminated against him by reason of his disability and he has therefore failed to state a claim under Count V.

---

[37] *Id*. at 1260.

[38] 813 F.3d 1289 (10th Cir. 2016).

[39] *Id*. at 1296.

[40] *Miller*, 565 F.3d at 1245.

E.C. also fails to state a claim under Count VI. E.C. alleges no facts allowing the Court to reasonably infer that USD 385 has "practices or policies" that intentionally discriminate against students with disabilities. Rather, E.C. mentions general instances of restraint or seclusion in response to his conduct. Since public entities are legally permitted to regulate students' misconduct, they are logically also permitted to enact practices and policies to regulate misconduct. Even if E.C. sufficiently alleged a thorough pattern of conduct such that de facto practices and policies were established, he has failed to allege that those practices and policies did anything more than legally regulate his misconduct, rather than illegally discriminate against him by reason of his disability. The Court concludes that E.C. has failed to state claims under Section 504 or the ADA in Counts V and VI. As such, the Court dismisses those claims.

## C.     Count VII – § 1983

Although it is unclear in the Amended Complaint, E.C. appears to assert a § 1983 claim against USD 385. E.C. specifically alleges that his Fourth and Fourteenth Amendment rights were violated when he was restrained and secluded in response to his misconduct. Since it is well established that a government employer can only be vicariously liable under § 1983 for its employees' actions if the injury results from a government policy, practice, or custom, the Court assumes for the sake of argument that E.C. intends to allege that USD 385 has a policy, practice, or custom that violated his constitutional rights. For the following reasons, the Court concludes that E.C. has failed to state a facially plausible claim under § 1983.

Section 1983 states, in relevant part: "Every *person* who under color of [law] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured . . . ."[41]  Overruling an

earlier decision,[42] the Supreme Court has held that, a municipality may be sued as a "person" under

§ 1983.[43]  But a municipality cannot be sued under § 1983 merely for the acts of its employees.[44]

Instead, plaintiffs must establish that the municipality's unconstitutional policy or custom was the

direct cause or moving force behind the alleged injury.[45]  A plaintiff may show the existence of

such a policy or custom by: (1) a formal regulation or policy statement, (2) a widespread and well-

settled practice within the municipality, (3) ratification of subordinates' actions by a an employee

with final policy-making authority, and (4) failure to adequately train or supervise employees as a

result of deliberate indifference to potential injuries to the public.[46]  Therefore, to survive the

present motion to dismiss, E.C. must have alleged in his amended complaint facts sufficient for

this Court to reasonably infer that (1) USD 385 implemented or executed policies or customs that

led directly to the Individuals' alleged use of excessive force, and (2) such policies or customs

have a direct causal relationship with E.C.'s alleged injury.[47]

E.C. has failed to allege facts sufficient for the Court to reasonably infer that USD 385

"implemented or executed policies" that led to the excessive use of force against E.C.  Rather, E.C.

simply alleges that USD 385's contractual relationship with the Interlocal makes it "highly

---

[41] 42 U.S.C. § 1983 (emphasis added).

[42] *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) (holding that municipal governments may not be sued under § 1983 because "Congress did not undertake to bring municipal corporations within the ambit of [§ 1983]").

[43] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[44] *See id.* at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

[45] *See id.* at 690, 694.

[46] *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

[47] *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

unlikely" that some unnamed USD 385 official was oblivious to actions by the Interlocal's employees. The Court is not persuaded that USD 385's mere knowledge—if any—of the Interlocal's disciplinary actions sufficiently evinces a policy, practice, or custom violating the Constitution under § 1983. Without discounting the severity of the allegations leveled at other individual defendants, the Court concludes that E.C. has failed to state a facially plausible claim against USD 385 and the Court dismisses Count VII.

## D.     Count VIII – Retaliation

Lastly, E.C. alleges in Count VIII that USD 385 retaliated against him for exercising his rights under the ADA, Section 504, and § 1983. USD 385 moves to dismiss these claims, arguing that E.C. did not suffer an "adverse action" and cannot otherwise show a causal connection between E.C.'s protected activity and USD 385's actions. USD 385 also argues, without citing to governing authority, that E.C. failed to exhaust his administrative remedies with regard to this retaliation claim and is therefore barred from raising it now. The Court concludes that E.C. did not need to exhaust administrative remedies before bringing this retaliation claim.

To state a claim for retaliation under the ADA and Section 504, a plaintiff must show three things: (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered adverse action, and (3) a causal link between the protected activity and adverse action.[48] Similarly, to state a claim for retaliation under § 1983, a plaintiff must show three things: (1) that the plaintiff was engaged in constitutionally protected activity, (2) that the defendant's actions caused the plaintiff to "suffer an injury sufficient to chill a person of ordinary firmness from continuing in that activity," and (3) that the defendant's adverse action was substantially based on the plaintiff's

---

[48] *Quidachay v. Kan. Dept. of Corr.*, 239 F. Supp.3d 1291, 1295 (D. Kan. 2017).

exercise of a constitutionally protected right.[49]  Furthermore, "close temporal proximity gives rise to an inference of retaliatory motive," but "distant temporal proximity does not and is insufficient to establish a causal link between [a protected activity and subsequent action]."[50]  "However, the temporal proximity . . . of three months, *coupled with* the [the adverse action of the defendant's agent], is sufficient to establish at least a prima facie showing of retaliatory motive."[51]

In the present case, E.C. alleges that he engaged in protected activities in at least two instances.  First, he filed a complaint with the KSDE on May 17, 2016, after the Interlocal held an IEP meeting without E.C. being present.  Second, E.C. filed an IDEA Due Process Complaint on March 31, 2017.  The Court agrees that both of these events are instances of E.C. engaging in protected activities.  As such, E.C. has alleged sufficient facts to satisfy the first element of a retaliation claim.

E.C. next alleges that he suffered adverse action when USD 385, through the Interlocal, contacted the KDCF after both administrative complaints to report truancy and possible parental misbehavior.  E.C. also alleges that USD 385 retaliated against him when Prairie Creek, one of its constituent schools, called the local police to have him arrested in October 2016, five months after E.C.'s complaint in May.  In response to these allegations, USD 385 argues that it could not have acted adversely to E.C. since its responsive actions were legal.  When the Interlocal filed a truancy charge with the KDCF, E.C. had in fact been absent from school for weeks.  Furthermore, the Interlocal first attempted to reach out to E.C.'s parents to inquire about E.C.'s absences, but E.C.'s

---

[49] *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

[50] *Koon v. Sedgwick Cty., Kan.*, 2010 WL 11523875, at *4 (D. Kan. 2010), *aff'd sub nom*, 429 F. App'x 713 (10th Cir. 2011).

[51] *Id.*

parents failed to reply. Additionally, when Prairie Creek called the police in October 2016, it was in response to E.C.'s aggressive threats and violent behavior. Both the Interlocal's response to E.C.'s truancy and Prairie Creek's response to E.C.'s misbehavior were reasonable, justified, and legal. On their own, those responses cannot be considered "adverse action" that satisfies the second element of retaliation. Since E.C. fails to allege other facts indicating that he suffered an illegal adverse action, the Court concludes that he has alleged insufficient facts to satisfy the second element of a retaliation claim.

Lastly, E.C. alleges that the temporal proximity between his protected activities and USD 385's actions satisfies the element of causal connection. The Parties cite to *Koon v. Sedgwick County, Kansas*,[52] a case decided by this Court in 2010. In that case, the plaintiff was an employee of the defendant when a co-worker filed a hostile work environment claim with the defendant's human resources department against plaintiff's supervisor. After being interviewed in connection with that complaint, the plaintiff was demoted and transferred to a new work location. The plaintiff alleged that his demotion and transfer resulted from the statements he gave in his interview with human resources. In his complaint, the plaintiff alleged that the HR employee—who was the defendant's agent—had recommended the plaintiff's demotion and transfer. The Court held that the defendant's actions, *coupled with* the temporal proximity of the protected activity and adverse action, were sufficient to establish a prima facie showing of retaliatory causation.[53]

This case differs from *Koon* because E.C. merely alleges temporal proximity between his protected activities and USD 385's actions. E.C. filed for an IDEA due process hearing on March

---

[52] 2010 WL 11523875 (D. Kan. 2010).

[53] *Id*. at *4.

31, 2017. Shortly thereafter, USD 385 sent E.C.'s parents a letter of inquiry, which they failed to reply to. USD 385 then filed a truancy charge with the KDCF. On June 23, 2017, KDCF agents arrived at E.C.'s home to investigate the truancy charge, later terminating the investigation after learning of the IDEA hearings. E.C. admits that he was in fact physically absent from school at Haverhill, and therefore warranting a truancy charge. The temporal proximity of his protected activities and USD 385's actions *alone* does not give rise to a reasonable inference that the two events were causally connected. Likewise, E.C. alleges that the temporal proximity of his arrest to the prior IDEA complaint establishes a causal connection. However, Prairie Creek called the police in response to E.C.'s misconduct in October 2016, five months after E.C.'s complaint in May. Besides this sequence of events and their temporal proximity, E.C. alleges no other facts indicating that USD 385 had a retaliatory motive. Mere temporal proximity in this case—unaccompanied by other factual allegations—fails to give rise to a reasonable inference that USD 385's actions were causally connected to E.C.'s protected activities. As a result, the Court concludes that E.C. has alleged insufficient facts to satisfy the third and final element of a retaliation claim. Because E.C. has failed to allege facts to support the second or third elements of a retaliation claim, the Court dismisses Count VIII for failure to state a facially plausible claim.

**IT IS THEREFORE ORDERED** that Defendant U.S.D. 385 Andover's Motion for Partial Dismissal (Doc. 44) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 29th day of April, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE