# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

E.C., a minor, individually and by and
through his parents and next friends, W.C.
and K.C.,

       *Plaintiff,*

vs.

Case No. 18-1106-EFM

U.S.D. 385 ANDOVER, *et al*,

       *Defendants.*

## MEMORANDUM AND ORDER

Before the Court are Motions to Dismiss Plaintiff's First Amended Complaint (Docs. 44 & 70) by Defendants Butler County Special Education Interlocal #638 (the "Interlocal"), Mitch Neuenschwander, Lisa Arndt, Derek Sarkett, Angie Adlesperger, Logan Adlesperger, Aspen Adlesperger, Jorden Ewert, Dawn Turner, Teresa Smith, and Jordan Tullis (collectively the "Individuals"). Plaintiff E.C., by and through his parents W.C. and K.C., brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. The only claims E.C. asserts against the Individuals are § 1983 claims in Count VII. The remaining Counts assert claims against the Interlocal and U.S.D. 385

Andover ("USD 385").  For the reasons stated below, the Court grants in part and denies in part the Defendants' motions.[1]

## I. Factual and Procedural Background[2]

E.C. is an 11-year-old disabled boy who has attended many local schools, oftentimes transferring in the middle of the year.  At one time or another, E.C. has attended New Song Academy, Princeton Children's Center, Holy Cross Lutheran School, Sunflower Elementary School, Meadowlark Elementary School, Prospect Special Day School, Haverhill Special Day School ("Haverhill"), Heartspring Day School ("Heartspring"), Lincoln Elementary School, Andover eAcademy, and Prairie Creek Elementary School ("Prairie Creek").  In particular, E.C. attended Fifth Grade at Prairie Creek in Andover and Haverhill in Augusta.  To accommodate disabled students and provide them with Free, Appropriate Public Education ("FAPE"), USD 385 and other Butler County school districts have formed the Interlocal.  Throughout E.C.'s schooling, the Interlocal has developed several Individualized Educational Programs ("IEP") and Behavioral Intervention Plans ("BIP") to attempt to meet E.C.'s special educational needs.

E.C.'s disability[3] manifests itself in aggressive, disruptive, disobedient, offensive, and sometimes violent, behavior.  The Interlocal first developed an IEP and BIP for E.C. on November 19, 2011.  Over time, E.C.'s behavior and school performance failed to improve.  Beginning in 2015, E.C. received educational services from Heartspring.  Unlike prior interventions, these

---

[1] The Interlocal does not clearly attempt to dismiss the IDEA procedural and substantive claims asserted by E.C. in Counts II and III.  The Court does not dismiss those claims in this order.

[2] The facts are taken from E.C.'s First Amended Complaint and are accepted as true for the purposes of this ruling.

[3] E.C.'s doctor has evaluated him as falling within the "autism spectrum disorder." However, USD 385 and the Interlocal contested this diagnosis, relying on independent evaluations that placed E.C. more in the attention deficit hyperactive disorder, and/or other behavioral disorders.  That dispute is not relevant to the current motion.

services consistently improved E.C.'s performance in school, reducing the negative manifestations of his disability. However, beginning in the summer of 2016, Heartspring was no longer able to provide E.C. with full-time educational services pursuant to his IEP. Instead, E.C.'s primary school at the time, Prairie Creek, undertook to carry out the IEP largely by itself, with some weekly assistance from Heartspring staff. After four emergency safety interventions ("ESI") in Fall 2016, Prairie Creek's principal indicated that E.C.'s IEP should be modified and that he should be transferred to Haverhill. In October 2016, E.C.'s parents consented to the new IEP and transferred E.C. to Haverhill. Neither Prairie Creek nor Haverhill's environments improved E.C.'s educational or behavioral outcomes.

Three events in E.C.'s educational history are particularly relevant to this motion. First, throughout E.C.'s schooling, his parents have been involved with the Interlocal's development and modification of his IEP. However, in May 2016 the Interlocal made changes to E.C.'s IEP without consulting his parents. In response, E.C. filed a complaint with the Kansas State Department of Education ("KSDE"), which ruled in his favor. Later that year, in October 2016, Prairie Creek called local police after a particularly aggressive instance of E.C.'s misbehavior. The police arrested E.C. and took him to juvenile detention. It was after this arrest that Prairie Creek initiated another IEP modification, transferring E.C. to Haverhill.

The second event relevant to this motion occurred in Spring 2017. In response to a perceived lack of clarity in Haverhill's communications with E.C.'s parents, E.C. filed for an IDEA due process hearing on March 31, 2017. Beginning on April 10, E.C.'s parents stopped sending E.C. to Haverhill and instead utilized the Interlocal's A+ online learning system. Noticing E.C.'s absence from school, Haverhill sent a letter of inquiry to E.C.'s parents on April 14, 2017. E.C.'s parents failed to respond to that letter, incorrectly assuming that E.C.'s use of the online learning

system constituted school attendance. Haverhill filed a truancy charge with the KSDE, and on June 23, 2017, an agent of the Kansas Department for Children and Families ("KDCF") went to E.C.'s home to speak with his parents. E.C.'s parents were not home at the time but later communicated with the KDCF agent, informing her about the ongoing IDEA due process hearing. In response, the KDCF agent closed the truancy investigation, indicating that she was formerly unaware of the IDEA proceedings.

The third and final event that is relevant to this motion occurred on November 1, 2016. On that day, E.C. had a particularly rough time at school. He pushed a school computer off a desk and then punched Ms. Arndt in the face. In response, some of the Individuals restrained E.C. and secluded him in a designated room. During that seclusion, E.C. was subjected to a "prone restraint" contrary to Kansas state law. During E.C.'s seclusion and 16-minute prone restraint, each of the Individuals passed by or through the seclusion room.

Pursuant to E.C.'s March 31, 2017 IDEA complaint, a hearing was held by independent hearing officer James Beasley (the "Hearing Officer") over a period of nine days (June 26–28, July 12–13, August 23–24, and September 19–20, 2017). The Hearing Officer considered the following questions: did USD 385 and the Interlocal (collectively the "Districts") deny autism as the primary exceptionality for E.C., resulting in a denial of FAPE?; did the Districts fail to provide appropriate services for E.C.'s autism diagnosis, resulting in a denial of FAPE?; did the Districts fail to implement the behavior intervention plan, resulting in a denial of FAPE?; did the Districts fail to ensure that the IEP provided FAPE?; did the Districts refuse to provide a required IEP amendment?; and lastly, if the Districts failed to provide FAPE, does that entitle E.C. to a residential placement at an undetermined location? The Hearing Officer issued his decision on December 18, 2017, ruling in favor of the Districts on all issues.

E.C. timely filed an appeal with the KSDE on January 17, 2018. Administrative Law Judge Bob L. Corkins (the "Review Officer") reviewed the Hearing Officer's decision and affirmed it on March 2, 2018. After properly exhausting all administrative remedies under the IDEA, E.C. filed this Case on April 2, 2018, seeking review and reversal of the IDEA administrative decisions. Multiple Defendants moved to dismiss the complaint. In response, E.C. filed his First Amended Complaint, further supplementing his factual allegations.

In addition to his IDEA claims, E.C. asserts Section 504 and ADA claims, alleging that the Interlocal failed to provide public education free from discrimination based on his disability. Furthermore, E.C. asserts a § 1983 claim, alleging the Interlocal and the Individuals violated his rights under the Fourth and Fourteenth Amendments through their disciplinary measures. The Interlocal and the Individuals now move under Rule 12(b)(6) to dismiss all claims E.C. asserts against them.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[5] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

of claims as well the grounds on which each claim rests.[7] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[8] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[10]

### III.   Analysis

#### A.   IDEA Compensatory Damage Claim

In his Amended Complaint, E.C. requests that the Court award him "all relief allowed by law and equity." The Interlocal seeks dismissal of any compensatory damage claims that E.C. asserts under the IDEA.[11] Although it is not entirely clear in his Amended Complaint, to the extent that E.C. seeks compensatory damages under the IDEA, the Court concludes that such claims are not allowed under the IDEA. The parties note that the Tenth Circuit has yet to definitively rule on this matter. However, multiple other circuits have ruled on it, concluding that the IDEA bars claims for compensatory damages.[12] As a result of the widespread agreement across the Circuit

---

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[8] *Iqbal*, 556 U.S. at 678–79.

[9] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[11] The Interlocal does not seek to dismiss the IDEA procedural and substantive review claims. Those claims, found in E.C.'s Amended Complaint under Counts II and III, will remain in this case against the Interlocal and USD 385.

[12] *See e.g., Polera v. Bd. of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 483–86 (2d Cir. 2002) (citing cases from the Fourth, Sixth, Seventh, Eighth, and Ninth Circuits); *Diaz Fonseca v. Puerto Rico*, 451 F. 13, 30–31 (1st Cir. 2006); *Ortega v. Bibb Cty. School Dist.*, 397 F.3d 1321, 1325–26 (11th Cir. 2005) (citing other Circuits).

Courts of Appeal, the Court concludes that the Tenth Circuit would disallow compensatory damage claims under the IDEA. Therefore, to the extent that E.C. attempts to allege IDEA compensatory damage claims, those claims are not "allowed by law and equity." Although the Interlocal seeks dismissal of the compensatory damage claims, E.C. cannot lawfully recover such damages. So, by the very language of his Amended Complaint ("all relief *allowed* by law and equity"), E.C. has not asserted claims for compensatory damages under the IDEA. As such, the Court need not grant the Interlocal's attempted dismissal.

Furthermore, as this Court previously held in its ruling on USD 385's motion to dismiss (Doc. 44), E.C. fails to state independent claims in Counts I and IV. Rather, in those Counts E.C. reiterates, albeit less clearly, the same substantive and procedural IDEA claims asserted under Counts II and III respectively. Since Counts II and III adequately cover all substantive and procedural claims E.C. may assert under the IDEA, Counts I and IV are superfluous. The Court therefore dismisses Counts I and IV *sua sponte*.

**B.     Section 504 and ADA Claims**

E.C. has labeled both Counts V and VI as "Section 504 and the ADA." In Count V, E.C. alleges that the Interlocal discriminated against E.C. by reason of his disability and therefore violated both Section 504 of the Rehabilitation Act and Title II of the ADA. In Count VI, E.C. similarly alleges that the Interlocal violated Section 504 and the ADA because it had "practices and policies" that discriminated against disabled students like himself. For the following reasons, the Court concludes that E.C. has failed to state claims in Counts V and VI, and the Court dismisses both claims.

Claims under § 504 of the Rehabilitation Act and Title II of the ADA, "involve the same substantive standards, [so courts] analyze them together."[13] Both § 504 and Title II of the ADA state that no individual with a disability shall, "by reason of" such disability, be subjected to discrimination.[14] To state a prima facie claim under Section 504 or the ADA, a plaintiff must allege that: (1) he is disabled under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against the plaintiff.[15] Furthermore, a plaintiff must allege intentional discrimination.[16] Intentional discrimination does not require proof of "personal animosity or ill will."[17] Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."[18] Put another way, "[t]he test for deliberate indifference in the context of intentional discrimination comprises two prongs: (1) knowledge that a harm to a federally protected right is substantially likely . . . and (2) a failure to act upon that . . . likelihood."[19] "[F]ailure to act is a result of conduct that is more than negligent, and involves an element of deliberateness."[20] Finally, "[u]nder either the ADA or the Rehabilitation Act, [a plaintiff] is

---

[13] *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (internal citations omitted).

[14] 29 U.S.C. § 794; 42 U.S.C. § 12132 (emphasis added).

[15] *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

[16] *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153–54 (10th Cir. 1999).

[17] *Id.* at 1153.

[18] *Id.*

[19] *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (internal citations omitted).

[20] *Id.*

obligated to show that he was otherwise qualified for the benefits he sought and that he was denied those *solely by reason of* [his] disability."[21]

Two Tenth Circuit decisions apply to the present case. In *J.H. ex rel. J.P. v. Bernalillo County*,[22] an officer arrested a disabled student for kicking a teacher. The student alleged that the arrest was "by reason of his disability" and therefore violated his ADA rights.[23] The court held that the officer acted by reason of the student's *conduct,* not his disability.[24] Likewise, in *J.V. v. Albuquerque Public Schools*,[25] an officer handcuffed a disabled student after the student displayed physical aggression toward teachers. The Tenth Circuit permitted the physical restraint of the disabled student based on his conduct. Ruling in favor of the school district on summary judgment, the court concluded that "a student's conduct may be regulated, so long as the action is not taken by reason of the student's disability," even if that conduct is a "manifestation of his disability."[26]

The Court concludes that E.C. has not stated a facially plausible claim for discrimination under Section 504 or the ADA. While E.C. states sufficient facts to satisfy the first three elements of a discrimination claim—that he is disabled and qualified to participate in the IDEA, and that the Interlocal receives federal funds—he fails to plausibly allege facts to satisfy the final element, discrimination. E.C. alleges that the Interlocal discriminated against him when it repeatedly restrained and secluded him in response to his disruptive—and oftentimes violent—conduct. He

---

[21] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (internal citations omitted) (emphasis added).

[22] 806 F.3d 1255 (10th Cir. 2015).

[23] *Id*. at 1257.

[24] *Id*. at 1260.

[25] 813 F.3d 1289 (10th Cir. 2016).

[26] *Id*. at 1296.

argues that since he was removed from the classroom, he was denied his right to public education. Importantly, however, E.C. fails to allege any facts that give rise to an inference that the Interlocal's actions were solely—or even partly— "by reason of" E.C.'s disability. Even though E.C. alleges that all of his actions were "manifestations of [his] disability," the Tenth Circuit has specifically held that "a student's conduct may be regulated," even if it is a "manifestation of his disability."[27] E.C. has failed to plausibly allege that the Interlocal discriminated against him by reason of his disability and he has therefore failed to state a claim under Count V.

E.C. also fails to state a claim under Count VI. E.C. alleges no facts allowing the Court to reasonably infer that the Interlocal has "practices or policies" that intentionally discriminate against students with disabilities. Rather, E.C. mentions general instances of restraint or seclusion in response to his conduct. Since public entities are legally permitted to regulate students' misconduct, they are logically also permitted to enact practices and policies to regulate misconduct. Even if E.C. sufficiently alleged a pattern of conduct such that de facto practices and policies were established, he has failed to allege that those practices and policies did anything more than legally regulate his misconduct, rather than illegally discriminate against him by reason of his disability. The Court concludes that E.C. has failed to state claims under Section 504 or the ADA in Counts V and VI. As such, the Court dismisses those claims.

C.   **Retaliation Claim**

E.C. alleges in Count VIII that the Interlocal retaliated against him for exercising his rights under the ADA, Section 504, and § 1983. The Interlocal moves to dismiss these claims, arguing

---

[27] *Miller*, 565 F.3d at 1245.

that E.C. fails to allege a causal connection between E.C.'s protected activity and the Interlocal's actions.

To state a claim for retaliation under the ADA and Section 504, a plaintiff must show three things: (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered adverse action, and (3) a causal link between the protected activity and adverse action.[28] Similarly, to state a claim for retaliation under § 1983, a plaintiff must show three things: (1) that the plaintiff was engaged in constitutionally protected activity, (2) that the defendant's actions caused the plaintiff to "suffer an injury sufficient to chill a person of ordinary firmness from continuing in that activity," and (3) that the defendant's adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right.[29] Furthermore, "close temporal proximity gives rise to an inference of retaliatory motive," but "distant temporal proximity does not and is insufficient to establish a causal link between [a protected activity and subsequent action]."[30] "However, the temporal proximity . . . of three months, *coupled with* the [the adverse action of the defendant's agent], is sufficient to establish at least a prima facie showing of retaliatory motive."[31]

In the present case, E.C. alleges that he engaged in protected activities in at least two instances. First, he filed a complaint with the KSDE on May 17, 2016, after the Interlocal held an IEP meeting without E.C. being present. Second, E.C. filed an IDEA Due Process Complaint on March 31, 2017. The Court agrees that both of these events are instances of E.C. engaging in

---

[28] *Quidachay v. Kan. Dep't of Corr.*, 239 F. Supp.3d. 1291, 1295 (D. Kan. 2017).

[29] *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

[30] *Koon v. Sedgwick Cty., Kan.*, 2010 WL 11523875, at *4 (D. Kan. 2010), *aff'd sub nom*, 429 F. App'x 713 (10th Cir. 2011).

[31] *Id*.

protected activities. As such, E.C. has alleged sufficient facts to satisfy the first element of a retaliation claim.

E.C. next alleges that he suffered adverse action when the Interlocal contacted the KDCF after both administrative complaints to report truancy and possible parental misbehavior. E.C. also alleges that the Interlocal retaliated against him when Prairie Creek, one of its constituent schools, called the local police to have him arrested in October 2016, five months after E.C.'s complaint in May. However, when the Interlocal filed a truancy charge with the KDCF, E.C. had in fact been absent from school for weeks. The Interlocal first attempted to reach out to E.C.'s parents to inquire about E.C.'s absences, but E.C.'s parents failed to reply. Additionally, when Prairie Creek called the police in October 2016, it was in response to E.C.'s aggressive threats and violent behavior. Both the Interlocal's response to E.C.'s truancy and Prairie Creek's response to E.C.'s misbehavior were reasonable, justified, and legal. On their own, those responses cannot be considered "adverse action" that satisfies the second element of retaliation. Since E.C. fails to allege other facts indicating that he suffered an illegal adverse action, the Court concludes that he has alleged insufficient facts to satisfy the second element of a retaliation claim.

Lastly, E.C. alleges that the temporal proximity between his protected activities and the Interlocal's actions satisfies the element of causal connection. In *Koon v. Sedgwick County, Kansas*,[32] this Court encountered a fact pattern somewhat similar to the present case. In that case, the plaintiff was an employee of the defendant when a co-worker filed a hostile work environment claim with the defendant's human resources department against plaintiff's supervisor. After being interviewed in connection with that complaint, the plaintiff was demoted and transferred to a new

---

[32] 2010 WL 11523875 (D. Kan. 2010).

work location. The plaintiff alleged that his demotion and transfer resulted from the statements he gave in his interview with human resources. In his complaint, the plaintiff alleged that the HR employee—who was the defendant's agent—had recommended the plaintiff's demotion and transfer. The Court held that the defendant's actions, *coupled with* the temporal proximity of the protected activity and adverse action, were sufficient to establish a prima facie showing of retaliatory causation.[33]

This case differs from *Koon* because E.C. merely alleges temporal proximity between his protected activities and the Interlocal's actions. E.C. filed for an IDEA due process hearing on March 31, 2017. Shortly thereafter, USD 385 sent E.C.'s parents a letter of inquiry, which they failed to reply to. The Interlocal then filed a truancy charge with the KDCF. On June 23, 2017, KDCF agents arrived at E.C.'s home to investigate the truancy charge, later terminating the investigation after learning of the IDEA hearings. E.C. admits that he was in fact physically absent from school at Haverhill, and therefore a truancy charge was warranted. The temporal proximity of his protected activities and the Interlocal's actions *alone* does not give rise to a reasonable inference that the two events were causally connected. Likewise, E.C. alleges that the temporal proximity of his arrest to the prior IDEA complaint establishes a causal connection. However, Prairie Creek called the police in response to E.C.'s misconduct in October 2016, five months after E.C.'s complaint in May. Besides this sequence of events and their temporal proximity, E.C. alleges no other facts indicating that the Interlocal had a retaliatory motive. Mere temporal proximity in this case—unaccompanied by other factual allegations—fails to give rise to a reasonable inference that the Interlocal's actions were causally connected to E.C.'s protected

---

[33] *Id.* at *4.

activities. As a result, the Court concludes that E.C. has alleged insufficient facts to satisfy the third and final element of a retaliation claim. Because E.C. has failed to allege facts to support the second or third elements of a retaliation claim, the Court dismisses Count VIII for failure to state a facially plausible claim.

**D.     § 1983 Claims**

Lastly, E.C. asserts § 1983 claims against both the Individuals and the Interlocal, alleging that they violated his constitutional rights. The Court will address the allegations against each Defendant in turn. Because the Court concludes that E.C. has failed to state § 1983 claims against any Defendant, it grants the Defendants' motions to dismiss those claims.

*1.     Individual Defendants*

Public employees enjoy qualified immunity in civil actions brought against them in their individual capacities which arise out of the performance of their duties.[34] They are entitled to qualified immunity if their conduct does not violate any clearly established constitutional rights of which a reasonable employee in that position would have known.[35] The plaintiff must "allege facts sufficient to overcome qualified immunity to survive a motion to dismiss for failure to state a claim."[36]

When analyzing issues of qualified immunity, courts engage in a two-pronged inquiry.[37] The first prong requires a showing that the defendant's conduct violated a constitutional right.[38]

---

[34] *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

[35] *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).

[36] *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

[37] *Tolan v. Cotton*, 57 U.S. 650, 654–56 (2014).

[38] *Id*.

The second prong of the analysis requires a determination that the right was "clearly established" when the incident occurred.[39] Clearly established law for purpose of the qualified immunity analysis must be "particularized to the facts of the case."[40] It requires a "high degree of specificity."[41] Moreover, the unlawfulness of the conduct must be apparent in light of the pre-existing law.[42] Courts have the discretion to decide the order in which to conduct the two-prong qualified immunity analysis.[43] The plaintiff has the burden to prove both prongs.[44]

The Individuals cite multiple cases dealing with the first prong of the qualified immunity analysis. In *Couture v. Board of Education of Albuquerque Public Schools*,[45] a six-year-old special education student was repeatedly placed in a "time out" room for his misconduct. The Tenth Circuit held that this did not violate the student's constitutional rights and therefore the individual defendants in *Couture* were entitled to qualified immunity from § 1983 liability.[46] In *Couture*, the individual defendants "were confronted with an almost impossible behavioral problem" which they dealt with in a reasonable manner under the circumstances.[47] The Tenth

---

[39] *Id.* at 657.

[40] *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

[41] *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

[42] *White*, 138 S. Ct. at 552.

[43] *Tolan*, 57 U.S. at 657.

[44] *Dodds*, 614 F.3d at 1191.

[45] 535 F.3d 1243 (10th Cir. 2008).

[46] *Id.* at 1249.

[47] *Id.* at 1251–52.

Circuit held that, even if the seclusion room did not meet standards under state law, the defendants retained their qualified immunity under § 1983.[48]

In *Ebonie S. v. Pueblo School District 60*,[49] the parents of a disabled five-year-old student sued the child's teacher and school district because the child spent most of her day in a "wraparound" desk. The desk significantly restrained the student's movement and the student could only leave the desk if she slid under it.[50] The parents argued that the use of the desk was an unconstitutional restraint for which the individual defendant was liable under § 1983.[51] The Tenth Circuit disagreed and found no constitutional violation even though the wraparound desk was prohibited under state law.[52]

Finally, in *Muskrat v. Deer Creek Public Schools*,[53] parents of a disabled student sued his teacher and the school district under § 1983 for what they claimed was "physical abuse," as well as the use of a seclusion room. The alleged physical abuse consisted of a slap to the boy's cheek, a slap to the boy's arm, and one incident in which the boy was held down by the shoulders to prevent him from leaving his desk.[54] The Tenth Circuit held in *Muskrat* that none of these incidents

---

[48] *Id.* at 1255–56.

[49] 695 F.3d 1051 (10th Cir. 2012).

[50] *Id.* at 1054–55.

[51] *Id.* at 1055–56.

[52] *Id.* at 1056–58.

[53] 715 F.3d 775 (10th Cir. 2013).

[54] *Id.* at 781.

rose to the level of a constitutional violation.[55] Moreover, placing the boy into a "time-out" room for acting out did not violate his constitutional rights.[56]

The Court concludes that E.C. has failed to allege facts that overcome the Individuals' qualified immunity from § 1983 claims. The Court accepts the fact that prone restraints are prohibited under Kansas state law, but even if the prone restraint in this case could be attributed to each of the Individuals, they would nevertheless be entitled to qualified immunity from § 1983 liability because, under the circumstances, the prone restraint did not violate E.C.'s *constitutional* rights. The cases cited above indicate that the Tenth Circuit has repeatedly upheld individual defendants' qualified immunity under similar—and sometimes more severe—factual scenarios. Here, the Individuals' act of secluding E.C., and even temporarily restraining him in the prone position, in response to his misconduct (destroying school property and punching Ms. Arndt in the face) does not violate E.C.'s constitutional rights. E.C. has failed to allege sufficient facts that give rise to a reasonable inference that the Individuals violated E.C.'s constitutional rights.

Furthermore, E.C. fails to allege any specific facts pertaining to each of the Individuals—besides their mere presence at one time or another outside of the seclusion room—that gives rise to the reasonable inference that any of them are not entitled to qualified immunity. E.C. makes multiple vague claims that unnamed persons listed as individual defendants used physical force, restraints, or seclusions against him at other instances. Absent particularized pleadings of facts as to any of the Individuals, the Court cannot hold that E.C. has stated facially plausible claims against

---

[55] *Id*. at 786–88.

[56] *Id*. at 787–88.

any one of them.[57] The Court therefore dismisses E.C.'s § 1983 claims in Count VII against the Individuals for failure to state a claim.

### 2. *The Interlocal*

Although it is unclear in the Amended Complaint, E.C. appears to assert a § 1983 claim against the Interlocal. E.C. specifically alleges that his Fourth and Fourteenth Amendment rights were violated when he was restrained and secluded in response to his misconduct. Since it is well established that a government employer can only be vicariously liable under § 1983 for its employees' actions if the injury results from a government policy, practice, or custom, the Court assumes for the sake of argument that E.C. intends to allege that the Interlocal has a policy, practice, or custom that violated his constitutional rights. For the following reasons, the Court concludes that E.C. has failed to state a facially plausible claim under § 1983.

Section 1983 states, in relevant part: "Every *person* who under color of [law] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."[58] Overruling an earlier decision,[59] the Supreme Court has held that, a municipality may be sued as a "person" under § 1983.[60] But a municipality cannot be sued under § 1983 merely for the acts of its employees.[61] Instead, plaintiffs must establish that the municipality's unconstitutional policy or custom was the

---

[57] *See Iqbal*, 556 U.S. at 678–80.

[58] 42 U.S.C. § 1983 (emphasis added).

[59] *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) (holding that municipal governments may not be sued under § 1983 because "Congress did not undertake to bring municipal corporations within the ambit of [§ 1983]").

[60] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[61] *See id.* at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

direct cause or moving force behind the alleged injury.[62] A plaintiff may show the existence of such a policy or custom by: (1) a formal regulation or policy statement, (2) a widespread and well-settled practice within the municipality, (3) ratification of subordinates' actions by a an employee with final policy-making authority, and (4) failure to adequately train or supervise employees as a result of deliberate indifference to potential injuries to the public.[63] Therefore, to survive the present motion to dismiss, E.C. must have alleged in his amended complaint facts sufficient for this Court to reasonably infer that (1) the Interlocal implemented or executed policies or customs that led directly to the Individuals' alleged use of excessive force, and (2) such policies or customs have a direct causal relationship with E.C.'s alleged injury.[64]

E.C. has failed to allege facts sufficient for the Court to reasonably infer that the Interlocal "implemented or executed policies" that led to the excessive use of force against E.C. The Court is not persuaded that the Interlocal's disciplinary actions sufficiently evinces a policy, practice, or custom violating the Constitution under § 1983. Without discounting the severity of the allegations leveled at other individual defendants, the Court concludes that E.C. has failed to state a facially plausible claim against the Interlocal and the Court dismisses Count VII.

**IT IS THEREFORE ORDERED** that Defendants Butler County Special Education Interlocal #638 and Mitch Neuenschwander's Motion for Dismissal (Doc. 46) is **GRANTED IN PART** as to Counts I, IV, V, VI, VII, and VIII, and **DENIED IN PART** as to Counts II and III.

---

[62] *See id.* at 690, 694.

[63] *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

[64] *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

**IT IS FURTHER ORDERED** that Defendants Lisa Arndt, Derek Sarkett, Angie Adlesperger, Logan Adlesperger, Aspen Adlesperger, Jorden Ewert, Dawn Turner, Teresa Smith, and Jordan Tullis' Motion for Dismissal (Doc. 70) is **GRANTED.**

Defendants Mitch Neuenschwander, Lisa Arndt, Derek Sarkett, Angie Adlesperger, Logan Adlesperger, Aspen Adlesperger, Jorden Ewert, Dawn Turner, Teresa Smith, and Jordan Tullis are therefore terminated from this case.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE